# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| KRISTINA LYNN HENICK, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | No. 2:11-cv-147-NT |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) failed to reflect a finding of moderate restriction in social functioning in the plaintiff's residual functional capacity ("RFC") and (ii) made a physical RFC finding unsupported by any expert opinion of record. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 7) at 2-4. I recommend that, on the basis of these errors, the court reverse and remand the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human*

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

*Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of rheumatoid arthritis, anxiety, and dysthymia, Finding 3, Record at 9; that she had the RFC to perform work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that she could lift and carry up to 20 pounds frequently and 50 pounds occasionally, could sit for up to six hours in a normal workday and walk/stand for two hours in a normal workday, could occasionally squat, crawl, reach above, stoop, crouch, and kneel, had to avoid heights, dangerous machinery, temperature extremes, and respiratory irritants such as dusts, gases, and fumes, required a routine with few workplace changes, was limited to four-step instructions, and could interact appropriately with supervisors, co-workers, and the public, Finding 5, *id*. at 11; that, considering her age (40 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 18-19; and that she, therefore, was not disabled from August 15, 2008, her alleged disability onset date, through the date of the decision, October 29, 2010, Finding 11, *id*. at 20.[2] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## Discussion

### A. Failure To Reflect Moderate Restriction in Social Functioning

As the plaintiff points out, *see* Statement of Errors at 2-3, the administrative law judge deemed her to have a moderate restriction in social functioning but included no corresponding

---

[2] The plaintiff is insured for purposes of SSD benefits through December 31, 2011. *See* Finding 1, Record at 9.

limitation in his RFC finding, *compare* Record at 10 *with* Finding 5, *id*. at 11. Indeed, despite the finding of moderate restriction in social functioning, he seemingly contradictorily found the plaintiff capable of interacting appropriately with supervisors, co-workers, and the public, *see* Finding 5, *id*. at 11, and stated in the body of his decision:

> There is no indication that the [plaintiff] has problems interacting socially. She talks everyday on the phone with friends and family. She attends school and goes to her appointments. [She] wrote that she gets along "okay" with authority figures and has never been laid off a job because of difficulties getting along with others.

*Id*. at 18 (citations omitted).

I have considered whether, as counsel for the commissioner contended at oral argument, the finding of a moderate restriction in social functioning was a scrivener's error; in other words, whether the administrative law judge meant to state, consistent with his RFC determination and accompanying explanation, that the plaintiff had no restrictions in social functioning. Yet, the administrative law judge pointedly stated that, with respect to the plaintiff's mental functioning, he had given the "[g]reatest weight" to the opinion of Ira H. Hymoff, Ph.D., a mental health expert who testified at the plaintiff's hearing, because Dr. Hymoff "had the opportunity to both review the evidence and listen to the testimony at the hearing." *Id*. He added that the limitations found by Dr. Hymoff had been incorporated into his RFC assessment. *See id*. Dr. Hymoff testified that, although the plaintiff's testimony indicated that she had a more marked limitation in social functioning, he would put it in the "moderate category" given that she had some friends, some family involvement, went to school, and worked with teachers. *See id*. at 53.

The administrative law judge did not ask Dr. Hymoff to translate that moderate limitation into functional terms. Instead, he evidently relied in relevant part on the mental RFC opinion of a second expert, Disability Determination Services ("DDS") nonexamining consultant Brenda

Sawyer, Ph.D., who found that the plaintiff had adequate social skills to interact with co-workers, supervisors, and the public. *See id*. at 524. However, Dr. Sawyer, unlike Dr. Hymoff, found that the plaintiff had no difficulties in maintaining social functioning. *See id*. at 510. In the circumstances, it is far from clear that the finding of a moderate limitation was inadvertent.

The administrative law judge ultimately relied at Step 5 on the testimony of a vocational expert in response to hypothetical questions that did not include any limitations on social functioning. *See id*. at 19, 60-63. At oral argument, counsel for the commissioner alternatively argued that any such error was harmless, given that the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") indicates that dealing with people is an insignificant component of two of the three jobs that the administrative law judge found the plaintiff capable of performing, those of addresser, DOT § 209.587-010, and document preparer, DOT § 249.587-018. *See id*. at 19. She observed that (i) the DOT states, with respect to both jobs, that people (taking instructions-helping) is not significant, and that talking and hearing are not present, *see* DOT §§ 209.587-010, 249.587-018, and (ii) the commissioner's regulations indicate that dealing with things, rather than people, is the primary function in unskilled work such as the jobs at issue, *see, e.g*., Appendix 2 to Subpart P, 20 C.F.R. § 404, § 201.00(i) ("[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than data or people)[.]").

Nonetheless, as the plaintiff's counsel rejoined, the commissioner's rulings also clarify that even unskilled work typically entails some level of interaction with co-workers and supervisors. *See, e.g*., Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2011) ("SSR 96-9p"), at 160 (mental capabilities required to perform unskilled work include "[r]esponding appropriately to supervision, co-workers and usual

work situations"); Social Security Ruling 85-15, reprinted in West's Social Security Reporting Service Rulings 1983-1991 ("SSR 85-15"), at 347 (same).  As the plaintiff's counsel persuasively argued, it is impossible to determine, in the absence of the translation of the plaintiff's moderate restriction in social functioning into a mental RFC, whether she possessed the mental capacity to meet such demands.  She may or may not have been restricted in her capacity to interact with co-workers and supervisors.  The error accordingly was not harmless.[3]

The administrative law judge's Step 5 finding cannot stand because he made a seemingly deliberate finding that the plaintiff had a moderate restriction in social functioning but failed to include any relevant resulting limitations in his RFC determination or in the hypothetical questions that he relayed to the vocational expert present at the plaintiff's hearing, and the error was not harmless.  *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of vocational expert are relevant only to extent offered in response to hypotheticals that correspond to medical evidence of record; "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions."); *Guber v. Astrue*, No. 1:10-cv-172-JAW, 2011 WL 1253888, at *2 (D. Me. Mar. 30, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("[T]he administrative law judge found such a limitation [moderate limitations in maintaining concentration, persistence, or pace] to exist and then ignored it while fashioning an RFC.  This he may not do.").

---

[3] My research indicates that cases in which this court has found harmless, on the basis of a DOT description, an administrative law judge's error in failing to transmit limitations on social functioning to a vocational expert are distinguishable.  In those cases, the administrative law judge omitted to convey a restriction that had been translated into an RFC finding, specifically a need to avoid or minimize dealings with the public.  *See, e.g., Hewes v. Astrue*, No. 1:10-cv-513-JAW, 2011 WL 4501050, at *8 (D. Me. Sept. 27, 2011) (rec. dec., *aff'd* Oct. 17, 2011); *Alley v. Astrue*, Civil No. 09-636-B-W, 2010 WL 4386516, at *7 (D. Me. Oct. 28, 2010) (rec. dec., *aff'd* Nov. 16, 2010); *Cranmer v. Astrue*, No. 07-99-P-S, 2008 WL 648964, at *5 (D. Me. Mar. 5, 2008) (rec. dec., *aff'd* Mar. 25, 2008).

## B. Physical RFC Finding Unsupported by Substantial Evidence

As the plaintiff suggests, *see* Statement of Errors at 3-4, reversal and remand are independently justified on a second basis: that the administrative law judge's physical RFC finding is not supported by substantial evidence.

In the absence of reliance on an expert's opinion, an administrative law judge, as a layperson, may make a finding of a claimant's RFC only to the extent that such a judgment can be made as a matter of common sense. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

The record contains two expert assessments of the plaintiff's physical RFC: that of DDS nonexamining consultant Robert Hayes, D.O., dated September 9, 2009, in which Dr. Hayes stated that the plaintiff did not have a medically determinable physical impairment, *see* Record at 521, and that of treating rheumatologist Edward Fels, M.D., dated August 13, 2010, in which Dr. Fels assessed a number of restrictions attributed to rheumatoid arthritis, *see id*. at 625-28. A third RFC assessment dated February 4, 2009, was completed by a "Single Decisionmaker," John Spinner, who apparently is not a medical expert. *See id*. at 373-81. No medical expert was present at the plaintiff's hearing to testify concerning her physical RFC. *See id*. at 23.

The plaintiff initially sought treatment from Dr. Fels on September 4, 2009, complaining of "chronic fatigue [and] . . . difficulty moving her fingers over the past 2-3 months." *Id*. at 590. She stated that she had not noticed any joint swelling, but that she had had some difficulty opening jars and soreness localized to her hands, neck, and feet, frequently accompanied by a

numbness and tingling sensation. *See id.* As of the time of a follow-up visit on October 15, 2009, Dr. Fels diagnosed rheumatoid arthritis. *See id.* at 586. On the strength of the Fels evidence, the administrative law judge found that the plaintiff had a severe impairment of rheumatoid arthritis. *See* Finding 3, *id.* at 9. Consistent with that finding, he did not adopt the opinions of Spinner or Dr. Hayes, neither of whom had the benefit of the Fels records, that the plaintiff had no medically determinable physical impairment and/or no physical limitations. *See id.* at 17.[4] Yet, he also gave only "some weight" to the remaining expert physical RFC opinion of record, that of Dr. Fels. *See id.* at 16. Notably, he assessed the plaintiff as capable of sitting for six hours in an eight-hour workday, whereas Dr. Fels found her capable of sitting for only four hours, and he declined to adopt any of Dr. Fels' upper extremity limitations, namely, findings that the plaintiff could reach, handle, finger, grasp, push, and pull only occasionally with both upper extremities. *Compare* Finding 5, *id.* at 11 *with id.* at 625-26.

In so doing, he reasoned that the Fels opinion was internally inconsistent and inconsistent with the record as a whole and that:

> The limitation to occasional fine and gross manipulation is at odds with Exhibits 7F, 11F, 15F, 17F, 22F and 26F. Moreover, it is not completely supported by [Dr. Fels'] progress notes that show relatively mild findings on clinical examination. Dr. Fels noted that the [plaintiff] was improving with treatment. Additionally, Dr. Fel[s'] opinion is inconsistent with the [plaintiff's] activities of daily living. She drives, attends school, and takes care of her young daughter. She cooks, shops, and performs household chores and does laundry. The [plaintiff] denied any problems with her personal care. In her Function Report – Adult, the [plaintiff] did not report any difficulties reaching or using her hands. The [plaintiff] endorsed difficulty lifting and bending due to pain, and standing secondary to vertigo. She did not endorse any other postural limitations. Exhibit 11F. See also Exhibit 12E.

*Id.* at 16.

---

[4] In any event, no weight should have been accorded to the opinion of Spinner, whom the administrative law judge mischaracterized as "Dr. John Spinner." *See* Record at 17.

7

The partial rejection of the Fels opinion on the bases provided, in the absence of any record support in the form of a medical expert's RFC opinion, exceeded the bounds of the administrative law judge's expertise, constituting an impermissible interpretation of the plaintiff's RFC based on the raw medical evidence. To the extent that the administrative law judge rejected manipulative limitations on the basis of conflicts with certain enumerated exhibits, most of those exhibits either predated the emergence of the symptoms that led the plaintiff to seek treatment from Dr. Fels, or did not take into account the Fels records, including Exhibit 7F (the Spinner RFC assessment dated February 4, 2009), *see id*. at 373-81, Exhibit 11F (treatment notes of Douglas Ertman, M.D., covering the period from February 13, 2009, to June 17, 2009), *see id*. at 402-413, and Exhibit 15F (the Hayes RFC opinion dated September 9, 2009), *see id*. at 514-21.[5] In Exhibit 17F, a progress note of a visit to orthopedist R. Reed Gramse, M.D., on August 3, 2009, the plaintiff was not noted to have complained of hand/arm or other arthritis symptoms; however, insofar as appears, she specifically consulted Dr. Gramse for a complaint of right shoulder pain. *See id*. at 526.[6]

As noted by the administrative law judge, *see id*. at 16, the plaintiff did indicate, in an Adult Function Report dated June 27, 2009, that her illnesses, injuries, or conditions did not affect her abilities to reach or use her hands, *see id*. at 242. However, the evidence as a whole reasonably can be construed as indicating that any functional impairment occurred after that date.

---

[5] Consistent with her report to Dr. Fels on September 4, 2009, that she had been experiencing soreness in her hands, neck, and feet for the prior two to three months, *see* Record at 590, the plaintiff told Dr. Ertman on June 17, 2009, that she had occasions several times a week when she awakened with pain and stiffness in her hands and feet, *see id*. at 402.

[6] The remaining two exhibits that the administrative law judge cited as inconsistent with Dr. Fels' assessment of manipulative limitations are Dr. Fels' progress notes for the period from May 18, 2010, through June 14, 2010 (Exhibit 22F), *see* Record at 595-602, and Dr. Fels' RFC opinion (Exhibit 26F), *see id.* at 625-28, which I discuss below.

While the plaintiff complained to Dr. Ertman on June 17, 2009, of pain and stiffness in her hands, she made no mention of resulting functional limitations at that time. *See id*. at 402. By contrast, she complained to Dr. Fels on September 4, 2009, that she had had some difficulty opening jars, *see id*. at 590, and on September 18, 2009, that she had some difficulties grasping objects, *see id*. at 587.

With respect to the asserted internal inconsistency in the Fels RFC opinion, the administrative law judge evidently relied on his observations that "[a]lthough Dr. Fels opined that the [plaintiff] was limited with respect to grasping and handling, he concluded that the [plaintiff] could drive automatic equipment frequently" and "[h]e described the [plaintiff's] pain as 'moderate.'" *Id*. at 16; *see also id*. at 626-27. A moderate level of pain does not self-evidently rule out manipulative limitations. To the extent that the demands of driving frequently are inconsistent with a limitation to only occasional grasping and handling, that calls into question only those limitations, not all of the cited manipulative limitations.

Finally, while it is true, as counsel for the commissioner pointed out at oral argument, that as of March 16, 2010, Dr. Fels noted improvement in the plaintiff's arthritis symptoms following treatment with methotrexate, *see id*. at 567, and, as of May 18, 2010, he noted that she was having fewer joint symptoms in her hands and had not noticed as much swelling and stiffness, *see id*. at 596, he noted in a more recent progress note of record, dated August 13, 2010, that she complained that her arthritis had worsened over the prior few months and that she was "particularly bothered by pain, swelling, and stiffness in her hands and feet" and had intermittent tingling of her left forearm and hand, sometimes associated with cramping, *see id*. at 632. He noted, on examination, that her wrists were tender with flexion, left worse than right, she had mild synovitis, or inflammation, of her MCP [metacarpophalangeal] and PIP [proximal

9

interphalangeal] finger joints, and a diminished grip strength. *See id*. at 633. Moreover, at her August 25, 2010, hearing, the plaintiff testified that she had constant pain in her hands, which she described as "a crushing feeling . . . . Sometimes my left hand will freeze up on its own, and I have to wait for it to unfreeze." *Id*. at 32.[7]

On this record, the finding that the plaintiff's rheumatoid arthritis imposed no manipulative limitations is unsupported by substantial evidence. That error, in turn, fatally undermined the administrative law judge's Step 5 finding, which relied on the testimony of a vocational expert that a person with the hypothetical profile presented, which omitted any manipulative limitations, could perform the representative jobs of addresser, order clerk, and document preparer. *See id*. at 19, 60-63. *See also, e.g., Arocho*, 670 F.2d at 375. Indeed, when the plaintiff's attorney asked the vocational expert whether a limitation to only occasional reaching, handling, and fingering with both hands would eliminate all of those jobs, the vocational expert testified that it would. *See* Record at 68. Reversal and remand accordingly are required on this basis, as well.

## Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

---

[7] At oral argument, counsel for the commissioner also underscored, *inter alia*, that Dr. Fels had noted at various points that he found no objective evidence of arthritis. To the extent that this bears on whether the plaintiff had a medically determinable arthritis impairment, it is irrelevant. While Dr. Fels initially questioned whether the plaintiff had rheumatoid arthritis, he found her symptoms compelling enough to sustain the diagnosis as of October 2009. *See, e.g.,* Record at 584 (note of Dr. Fels dated October 29, 2009, stating: "The plaintiff has rheumatoid arthritis that has not improved with Plaquenil. . . . [S]he does not have discreetly swollen joints but does have compelling symptoms."). More to the point, the administrative law judge accepted that the plaintiff had a medically determinable rheumatoid arthritis impairment. *See* Finding 3, *id*. at 9. To the extent that this bears on the plaintiff's symptoms, as noted above, the plaintiff reported to Dr. Fels on August 13, 2010, that her symptoms were worsening, and, on examination, he found tender wrists, mild synovitis of her finger joints, and diminished grip strength. *See id*. at 632-33.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge